IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>ALEX ANTHONY VALDEZ<br><br>Defendant. | ORDER DENYING<br>MOTION TO SUPPRESS<br><br><br><br>Case No. 2:08-CR-846 |

The defendant, Alex Anthony Valdez, is charged with felon in possession of a firearm, possession of a firearm while subject to a protective order, and possession of an unregistered sawed-off shotgun. In relation to these charges, Mr. Valdez has moved the court to suppress the firearm officers seized pursuant to a search of the truck he was driving. Mr. Valdez's motion to suppress statements made after his arrest was withdrawn by counsel on July 20, 2010. (Tr. 6, ECF No. 88).

The court held an evidentiary hearing on the motion to suppress on July 20, 2010. The government called as witnesses Deputy Makaloni Prescott and Deputy Michael Gregory. Having considered this testimony and the parties' briefings, the court enters the following Order.

FINDINGS OF FACT

The court finds the relevant facts as follows. On November 1, 2008, Salt Lake County

Sheriff[1] patrol officers Deputy Makaloni Prescot and Deputy Michael Gregory responded to a dispatch for a welfare check on Andrea Valdez. (Tr. 7). The dispatch requested the officers to go to Livery Stables, a horse stable located at 4565 South 1500 East in Salt Lake County. (Tr. 8-9). This request was made because officers in another jurisdiction, South Salt Lake, had found Mrs. Valdez's door kicked in and signs of a struggle. (*Id.* & Tr. 49) The dispatch informed the County Sheriff officers that Mrs. Valdez had a protective order against her husband, Alex Valdez, and that there were outstanding warrant against Mr. Valdez. (Tr. 8, 50). The dispatch also provided a physical description of Mr. Valdez and of a truck he might be driving. (Tr. 10). Livery Stables was listed as a protected place in the protective order. (Tr. 15).

When the officers arrived at the Livery Stables they observed a truck matching the description dispatch provided. (Tr. 10-11). Both Officer Prescot and Officer Gregory approached the truck. Mr. Valdez was inside. (Tr. 12). Officer Prescott attempted to verify Mr. Valdez's identity and, after sometime, the defendant acknowledged that he was Alex Valdez. The officer asked Mr. Valdez to step out of the vehicle. Mr. Valdez refused and the officers were required to remove him from the truck. (Tr. 16-17). Based on his violation of the protective order and an outstanding arrest warrant, the officers arrested Mr. Valdez. (Tr. 15, 20). Mr. Valdez was originally moved behind his truck and then later into one of the patrol cars. (Tr. 39). Following Mr. Valdez's arrest, Officer Gregory searched the truck. (Tr. 21). As part of the search, Officer Gregory found a sawed-off shotgun behind the seat of the truck in a jacket.

---

[1] On January 1, 2010, the Salt Lake County Sheriff's Office was reorganized and now operates as the Unified Police Department. All incidents relating to this case occurred prior to the reorganization; therefore, the court will refer to the agency as the Salt Lake County Sheriff's Office.

Officer Prescott testified that the search was performed incident to arrest and the truck's contents were then inventoried. (Tr. 21). He explained, "When a person is arrested we are responsible for that vehicle under our policy, so we do an impound and he was being arrested and it was inventoried." (Tr. 21, ll. 6-8). Officer Gregory also testified that the truck was searched "[p]rimarily to inventory it because we were impounding the vehicle, and also incident to arrest." (Tr. 60-61, ll. 25 & 1). According to Officer Gregory, "[g]enerally when someone is placed under arrest, knowing that we have no one else to take the vehicle, we just contact dispatch and ask them to start calling a tow truck." (Tr. 70, ll. 20-23). Following that policy, Mr. Valdez's truck was inventoried and impounded. (Tr. 45-46). Mr. Valdez was booked into the Salt Lake County jail.

## DISCUSSION

The officers testified and the United States argues that the search of the truck was lawful as a pre-*Gant* search incident to arrest and as an inventory search. The court will address each basis for the search of the truck in turn.

### I.  THE EXCLUSIONARY RULE DOES NOT APPLY IN THIS CASE BECAUSE THE OFFICERS RELIED IN GOOD FAITH ON TENTH CIRCUIT CASE LAW REGARDING SEARCHES INCIDENT TO ARREST.

"Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 129 S.Ct. 1710, 1716 (2009). The exception exists to ensure officer safety and evidence preservation, which are critical issues in an arrest situation. *Id.* Based on these reasons, the exception has been limited to areas within the arrestee's immediate control. *Id.*; *see also Chimel v. California*, 395 U.S. 752, 763 (1969).

*New York v. Belton* extended the exception to searches of automobiles following a traffic

3

stop or other circumstance where the arrestee had been in a vehicle. Recently, the United States Supreme Court clarified that, in such circumstances, a vehicle search incident to arrest is only lawful "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. . . . [or] when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant,* 129 S.Ct. at 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (Scalia, J., concurring in judgment)). Prior to *Gant,* numerous courts and law enforcement agencies had read *Belton* broadly to allow a search incident to arrest any time a person was arrested as part of a traffic stop or other circumstances involving a motor vehicle. *Id.* at 1722.

The search in this case occurred prior to the ruling in *Gant* and, therefore, the officers relied on the broader interpretation of *Belton* that a search incident to arrest, regardless of the arrestee's ability to access the car, is reasonable. The government argues that while under *Gant* the search would be unreasonable, it should nevertheless be upheld under the good faith doctrine.

Under the good faith doctrine, evidence obtained in an unconstitutional search is not suppressed unless "a reasonably well trained officer would have known that the search was illegal in light of all the circumstances." *Herring v. United States,* 129 S.Ct. 695, 703 (2009). This rule seeks to preserve the deterrent effect of the exclusionary rule, while at the same time limiting the cost of applying the rule–letting the guilty go free. *United States v. McCane,* 573 F.3d 1037, 1042 (10th Cir. 2009). In this case, suppressing the evidence would not have any deterrent effect on law enforcement; in conducting the search the officers believed they were acting reasonably and within the confines of the law. In fact, at the time of the search, the case law in this Circuit supported their actions. *United States v. Humprey*, 208 F.3d 1190 (10th Cir.

4

2000) (upholding search of car after defendant was arrested, handcuffed, and placed in patrol car); *United States v. Brothers*, 438 F.3d 1068 (10th Cir. 2006) (upholding search after defendant was restrained). As the Tenth Circuit has explained, "a police officer who undertakes a search in reasonable reliance upon the settled case law of a United States Court of Appeals, even though the search is later deemed invalid by Supreme Court decision, has not engaged in misconduct." *United States v. McCane,* 573 F.3d 1037, 1042 (10th Cir. 2009). And without misconduct, there is no need to deter. *Id.* ("[E]xcluding evidence based on judicial error would serve no deterrent purpose."). Accordingly, the court concludes that the good faith exception to the exclusionary rule applies and declines to suppress the evidence based on an invalid search incident to arrest.

## II. THE EVIDENCE RELATING TO THE COUNTY'S POLICY FOR INVENTORY SEARCHES WAS MINIMAL.

An inventory search conducted in good faith is an exception to the search warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). Such searches are valid under the Fourth Amendment based on the limited privacy right of the vehicle's owner or occupant and the government's interest in protecting the property, avoiding claims, and protecting police from danger. *Id.* at 372 (discussing *South Dakota v. Opperman*, 428 U.S. 364 (1976)). Still, "the right to [conduct an] inventory search . . . does not carry in its wake unlimited discretion." *United States v. Griffiths*, 47 F.3d 74, 78 (2d Cir. 1995). Instead, the court has repeatedly held that an inventory search must be conducted in good faith and pursuant to "standardized criteria" or an "established routine." The policy governing the criteria "or practice governing inventory searches should be designed to produce an inventory." *Florida v. Wells*, 495 U.S. 1, 4 (1990). "The existence of such a valid procedure may be proven by reference to either written rules and

5

regulations or testimony regarding standard practices." *Id.* (citations omitted). *U.S. v. Mendez*, 315 F.3d 132, 137 (2d Cir. 2002) (quoting *United States v. Thompson*, 29 F.3d 62, 65 (1994)*).* The burden is on the prosecution to establish that any evidence recovered from an inventory search "was the result of a search conducted in accordance with known, established police procedures." *United States v. Hope*, 102 F.3d 114, 117 (5th Cir. 1996).

In this case, whether the prosecution satisfied this burden is a very close question. The officers' testimony regarding the policy for inventory searches was very limited. They testified that the truck was searched as part of a pre-impound inventory and that it was the Sheriff Office's policy to impound a vehicle when a person is arrested and there is no one else to take the vehicle. Such limited testimony and evidence only established that the Sheriff's Office has a policy to impound vehicles and that a search is performed prior to the impoundment. The testimony provided little information for the court to conclude that the policy provides standard procedures for an inventory search to ensure that an inventory search is performed to safeguard the public and the police officers and not for the sole purpose of investigation. Such vague and limited evidence stands in sharp contrast to the evidence presented in *Colorado v. Bertine*, where evidence was presented and the court found that the police's "standard procedures for impounding vehicles mandated 'a detailed inventory involving the opening of containers and the listing of [their] contents.'" 479 U.S. 367, 370 (1987). Without any evidence as to the criteria for a inventory search under the Sheriff Office's policy, it is difficult for the court to conclude that the prosecution has met its burden to show that the search was conducted in accordance with known, standard procedures. However, because the court concluded that the search was a valid search incident to arrest under the good faith doctrine, it is not necessary for the court to opine

on the validity of the inventory search. Accordingly, the court will reserve judgment on the issue but encourage the parties in the future to better develop the evidence of known, standard procedures when relying on an inventory search.

## CONCLUSION

The court concludes that the good faith doctrine provides an exception to the exclusionary rule in this case. The evidence at issue in this motion was obtained in a search incident to arrest that was not constitutional pursuant to current Fourth Amendment standards. However, the exclusionary rule does not apply to this violation because the officers in conducting the search relied in good faith on the Tenth Circuit's interpretation of the Fourth Amendment, which was controlling in the jurisdiction at the time of the search. The government also asserts that the search was a valid inventory search. The evidence relating to this Sheriff Office's policy for such searches was minimal. Because the court upholds the search under the good faith doctrine, it makes no conclusions as to the validity of the inventory search. The defendant's motion to suppress is DENIED.

IT IS SO ORDERED.

DATED this 27th day of September, 2010.

BY THE COURT:

_____
Dee Benson
United States District Court Judge